


DEC 0 6 2023

Kevin P. Weimer, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Indictment |
| v. | No. |
| JOHNNY NARCISSE AND JOHNSON DIEUJUSTE | 1:23-CR-0397 |
| | UNDER SEAL |

THE GRAND JURY CHARGES THAT:

**Background**

At all times relevant to this Criminal Indictment:

1. Defendant JOHNNY NARCISSE was a resident of Brookhaven, Georgia. He owned and controlled *US Financial & Tax Services*.

2. Defendant JOHNSON DIEUJUSTE was a resident of Dacula, Georgia.

**Small Business Administration**

3. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA issued loans through the U.S. Department of the Treasury. The SBA also facilitated loans through banks, credits unions, and other lenders that had government-backed guarantees.

## Paycheck Protection Program

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state

its average monthly payroll expenses and its number of employees, among other things.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7.  A PPP loan application was processed by a participating financial institution ("lender").  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8.  PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.  Under the applicable PPP rules and guidance, the interest and principal on the PPP loan were eligible for forgiveness if the business was eligible for the PPP loan it received, spent the loan proceeds on these permissible expense items within a designated period, and used a certain portion of the loan proceeds for payroll expenses.

### Economic Injury Disaster Loan Program

9. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10. Another source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having as employees. The EIDL advances did not have to be repaid.

11. To obtain an EIDL or an EIDL advance for COVID-19 relief, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, and gross revenues and cost of goods sold for the 12-month period preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

12. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA through the United States Treasury. EIDL funds were required to be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

### Relevant Entities

13. Lender 1 was a financial technology company headquartered in Redwood City, California that participated in the SBA's PPP as a service provider. As such, Lender 1 accepted applications for PPP loans and matched applicants with another lender for loan fund disbursement.

14. Bank 1 was a federally insured financial institution headquartered in Fort Lee, New Jersey that participated in the SBA's PPP as a lender. At all relevant times, Bank 1 had a business relationship with Lender 1, through which Bank 1 disbursed PPP loan funds to approved applicants.

15. Lender 2 was a company headquartered in New York, New York that participated in the SBA's PPP as a lender.

## Count One
## Wire Fraud Conspiracy
## (18 U.S.C. § 371)

16. The Grand Jury realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 15 of this Indictment as if fully set forth herein.

17. From at least in or around July 2020 through at least in or around April 2021, in the Northern District of Georgia, and elsewhere, the defendants,

**JOHNNY NARCISSE and**
**JOHNSON DIEUJUSTE,**

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with each other and with other individuals, known and unknown, to commit certain offenses against the United States, namely: wire fraud, that is, to knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and

foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

<u>Purpose of the Conspiracy</u>

18. It was the purpose of the conspiracy for the defendants and others, known and unknown the Grand Jury, to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent PPP and EIDL loan applications to the SBA and SBA-approved lenders; (b) falsely promising to use the loan proceeds on permitted business expenses under the PPP and EIDL programs; (c) concealing and causing the concealment of the scheme; and (d) diverting fraud proceeds for the personal use and benefit of themselves and others.

<u>Manner and Means of the Conspiracy</u>

19. In furtherance of the conspiracy, and to accomplish its object, the defendants and others, known and unknown to the Grand Jury, submitted and caused to be submitted fraudulent PPP and EIDL loan applications to the SBA and SBA-approved lenders for the purpose of obtaining funds from them.

20. Throughout the conspiracy, and in connection with the applications for PPP and EIDL loans, the defendants and others, known and unknown to the Grand Jury, submitted and caused to be submitted materially false and fraudulent information to the SBA and SBA-approved lenders, including falsely and fraudulently representing to lenders: (i) the applicant entities' number of employees; (ii) the applicant entities' average monthly payroll; (iii) the applicant entities' gross revenue and cost of goods sold; (iv) the supporting documentation submitted with the applications; and (v) the truth and accuracy of all the information and documents submitted in or with the applications. As a result of these false statements, the SBA and lenders issued over $1 million in PPP and EIDL loans to these various entities.

21. It was further part of the conspiracy that once the applicant entities received the PPP and EIDL loan proceeds, they made payments to the defendants as compensation.

### Overt Acts in Furtherance of the Conspiracy

22. In furtherance of the conspiracy and to accomplish its objects, the defendants and others, known and unknown to the Grand Jury, committed various overt acts in the Northern District of Georgia and elsewhere, including, but not limited to, the following:

a. On or about July 7, 2020, the defendants submitted and caused to be submitted to the SBA an EIDL application in the name of *Merlie's Braids & More*, falsely representing that it had $385,462 in gross revenue, $123,542 in cost of goods sold, and six employees.

b. On or about July 9, 2020, the defendants submitted and caused to be submitted to the SBA an EIDL application in the name of *NuraCode LLC*, falsely representing that it had $389,562 in gross revenue, $128,543 in cost of goods sold, and ten employees.

c. On or about July 18, 2020, the defendants submitted and caused to be submitted to Lender 1 a PPP application in the name of *Global Landscaping LLC*, falsely representing that it had an average monthly payroll of $160,000, seven employees, and paid over $1.3 million in wages to its employees in 2019.

d. On or about July 21, 2020, the defendants submitted and caused to be submitted to Lender 1 a PPP application in the name of *Three Hearts One Beat Inc.*, falsely representing that it had an average monthly payroll of $115,200, six employees, and paid over $1 million in wages to its employees in 2019.

e. On or about February 17, 2021, the defendants submitted and caused to be submitted to Lender 1 a PPP application in the name of *NuraCode LLC*, falsely representing that it had an average monthly payroll of $20,316, seven employees, and paid $230,000 in wages to its employees in 2020.

f. On or about April 5, 2021, the defendants submitted and caused to be submitted to Lender 2 a PPP application in the name of *Business and Residential Computer Systems LLC*, falsely representing that it had an average monthly payroll of $35,000, nine employees, and paid $420,000 in wages to its employees in 2020.

All in violation of Title 18, United States Code, Section 371.

**Counts Two through Seven**
**Wire Fraud**
**(18 U.S.C. § 1343 and § 2(a))**

23. The Grand Jury realleges and incorporates by reference the factual allegations contained in paragraphs 1 through 15 of this Indictment as if fully set forth herein.

24. From at least in or around July 2020 through at least in or around April 2021, in the Northern District of Georgia, and elsewhere, the defendants,

**JOHNNY NARCISSE and**
**JOHNSON DIEUJUSTE,**

did knowingly, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signals, pictures, and sounds, for the purpose of executing such scheme and artifice.

### Purpose of the Scheme and Artifice

25. The Grand Jury realleges and incorporates by reference paragraph 18 of this Indictment as a description of the purpose of the scheme and artifice to defraud.

### Manner and Means of the Scheme

26. The Grand Jury realleges and incorporates by reference paragraphs 19 through 22 of this Indictment as a description of the scheme and artifice to defraud.

### Use of the Wires

27. On or about the dates specified as to each count and as to each defendant below, the defendants and others, known and unknown to the Grand

Jury, in the Northern District of Georgia, and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, and aided and abetted by each other, transmitted and caused to be transmitted the following wire communications in interstate and foreign commerce:

| COUNT | DEFENDANT(S) | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE |
|---|---|---|---|
| 2 | NARCISSE DIEUJUSTE | July 7, 2020 | Transmission of EIDL application on behalf of *Merlie's Braids & More* from Georgia to Virginia |
| 3 | NARCISSE DIEUJUSTE | July 9, 2020 | Transmission of EIDL application on behalf of *NuraCode LLC* from Georgia to Virginia |
| 4 | NARCISSE DIEUJUSTE | July 18, 2020 | Transmission of PPP application on behalf of *Global Landscaping LLC* to Lender 1 from Georgia to West Virginia |
| 5 | NARCISSE DIEUJUSTE | July 21, 2020 | Transmission of PPP application on behalf of *Three Hearts One Beat Inc.* to Lender 1 from Georgia to West Virginia |
| 6 | NARCISSE DIEUJUSTE | February 17, 2021 | Transmission of PPP application on behalf of *NuraCode LLC* to Lender 1 from Georgia to West Virginia |
| 7 | NARCISSE DIEUJUSTE | April 5, 2021 | Transmission of PPP application on behalf of *Business and Residential Computer Systems LLC* to Lender 2 from Georgia to New York |

All in violation of Title 18, United States Code, Section 1343 and Section 2(a).

### Forfeiture Provision

28. Upon conviction of one or more offenses alleged in Counts One through Seven of this Indictment, the defendants, JOHNNY NARCISSE and JOHNSON DIEUJUSTE, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds the person obtained directly or indirectly as the result of such violation, including but not limited to the following:

> MONEY JUDGMENT: A sum of money in United States currency equal to the amount of proceeds the defendant obtained as a result of the offenses for which the defendant is convicted.

29. If, as a result of any act or omission of the defendants, any property subject to forfeiture: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be subdivided without difficulty; the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Section 982(b), to seek forfeiture of any other property of the defendants

13

up to the value of the forfeitable property or seek a money judgment against said

defendants for any amount that would constitute the proceeds of such violation.

A _____True_____ BILL

_____
FOREPERSON

RYAN K. BUCHANAN
  *United States Attorney*

GLENN S. LEON
  *Chief, Fraud Section, Criminal Division*

*/s/ Alana R. Black*
ALANA R. BLACK
  *Assistant United States Attorney*
Georgia Bar No. 785045

*/s/ Jennifer Bilinkas*
JENNIFER BILINKAS
  *Trial Attorney*
New York Bar No. 5479522

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20005

14